## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

<table>
<tr>
<td>

1. **TREY LUPTON, individually and on behalf of all others similarly situated pursuant to 29 U.S.C. § 216(b),**

   *Plaintiffs,*

v.

1. **GB PROVISIONS, LLC; and**
2. **LOWOODFIRE, LLC d/b/a Lowood,**

   *Defendants.*

</td>
<td>

No.  23-cv-00403-JFJ


PLAINTIFF'S COLLECTIVE
ACTION COMPLAINT

</td>
</tr>
</table>

### PLAINTIFF'S COLLECTIVE ACTION COMPLAINT

The case is brought against GB Provisions, LLC and LowoodFire, LLC d/b/a Lowood (collectively, "Defendants") arising from their unlawful practices that deprive their employees— including Plaintiff and other employees like Plaintiff—of the wages rightfully owed to them under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  Plaintiff brings this complaint individually and on behalf of all other similarly situated employees—other servers—who worked at Defendants' restaurants in Oklahoma at any time in the past three (3) years.

**Table of Contents**

I.      Summary of FLSA Minimum Wage and Tip Credit Violations ..............................................3

II.     Parties ................................................................................................................. 8

III.    Jurisdiction and Venue ................................................................................... 9

IV.     Defendants are Required to Comply with the FLSA ............................................10

V.      Facts Supporting Minimum Wage and Tip Credit Violations ............................... 11

VI.     Revised Field Operations Handbook and Dual Jobs Regulation ......................... 20

VII.    Collective Action Allegations ........................................................................21

VIII.   Cause of Action No. 1: Failure to Pay the Minimum Wage .................................23

IX.     Cause of Action No. 2: Unlawful Kickbacks ..................................................... 24

X.      Wage Damages Sought ..................................................................................... 24

XI.     Jury Demand ....................................................................................................25

XII.    Prayer for Relief................................................................................................25

## I.     SUMMARY OF FLSA MINIMUM WAGE AND TIP CREDIT VIOLATIONS

1.     Defendants paid Plaintiff—and other servers like Plaintiff—wages that are less than $7.25 per hour, which is the minimum wage required by the FLSA, 29 U.S.C. § 206.

2.     Instead of paying their servers the full minimum wage required by the FLSA, it appears Defendants were attempting to take credit for the tips its servers earned in order to supplement and meet the minimum wage requirement. This method of paying tipped employees less than minimum wage and relying on tips to meet the minimum wage requirement is commonly referred to as taking a "tip credit." *See* 29 U.S.C. § 203(m).

3.     Under the FLSA's tip credit provisions—an affirmative defense—an employer may, under certain circumstances, pay "tipped employees" less than the minimum wage by taking a "tip credit" against the employer's minimum wage obligations from the tips its employees receive from customers. In other words, if an employer can prove it complied with the strict requirements for taking a tip credit, then the employer may be permitted in limited circumstances to pay its tipped employees as little as $2.13 per hour by taking a "credit" for a portion of the tips an employee earns up to a maximum tip credit of $5.12 per hour. *See* 29 U.S.C. 203(m).

4.     However, in order to take a credit for *any* portion of an employee's tips, the employer must first show compliance with the strict requirements for taking a "tip credit" *See* 29 U.S.C. 203(m).

5.     For example, an employer must advise its employee *prior* to taking a tip credit that the employer will be utilizing a tip credit and provide the employee with notice of each of the tip credit provisions required by the FLSA. *See e.g., Id.* (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the

provisions of [the tip credit].").

6.      More specifically, prior to taking a tip credit, an employer must inform tipped

employees of its use of the tip credit. *Marlow v. New Food Guy, Inc.*, 861 F.3d 1157, 1160 (10th

Cir. 2017) (citing 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b)). Further, the amount paid to the

employee by the employer must be equal to "(1) the cash wage paid such employee which for

purposes of such determination shall be not less than [$2.13, a special minimum for tipped

employees]; and (2) an additional amount on account of the tips received by such employee which

amount is equal to the difference between the wage specified in…(1) [$2.13] and [$7.25, the usual

federal minimum]." *Id*. Additionally, the tip amount cannot "exceed the value of the tips actually

received by an employee." *Id*. Tips may be pooled among "employees who customarily and

regularly receive tips." *Id*.

7.      Moreover, an employer must also provide the employee with <u>written</u> notice of the

information required by 29 C.F.R. § 516.28(a)(3). Specifically, the employer must provide all

affected employees with written notice as follows: "[t]he amount per hour which the employer

takes as a tip credit shall be reported to the employee in writing each time it is changed from the

amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3).

8.      In addition to providing notice of the tip credit, the employer must show that its

tipped employees retained one hundred percent of all their tips other than tips contributed to a

lawful tip pool—that is, a tip pool that is fully distributed solely among customarily and regularly

tipped employees. *See Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999) (for "the

work shifts in which salad mixers were included within the tip pool, the pooling scheme was

illegal..."); *Portales v. MBA Inv. Co., LLC*, No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D.

Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another

employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203));
*Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted
to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

9.      Moreover, an employer will not be permitted to take a tip credit where its tipped
employees kick-back, either directly or indirectly, to the employer for anything other than "the
reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities, if [they]
are customarily furnished by [the] employer to his employees." *Ettorre v. Russos Westheimer, Inc.*,
No. 21-20344, 2022 U.S. App. LEXIS 7295, at *9 (5th Cir. Mar. 18, 2022) (quoting 29 U.S.C. §
203(m)). In other words, an employer violates the tip credit if its tipped employees have to pay for
their own uniforms, tools, or any other items used in connection with their employment "unless
the 'facilities' it covers counts as a 'wage.'" *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344,
2022 U.S. App. LEXIS 7295, at *9 (5th Cir. Mar. 18, 2022).

10.     Furthermore, an employer is only permitted to take a tip credit and pay its tipped
employees the subminimum hourly wage when the employee is engaged duties related to their
tipped occupation. In other words, an employer is prohibited from taking a tip credit and paying its
tipped employees subminimum hourly wages to perform non-tipped work that is not related to
their tipped occupation. *See Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1283 (10th Cir. 2017)
(explaining that the tip credit only applies to "tipped employee[s]) (citing 29 U.S.C. § 203(m)) ;
*Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped
employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in
the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning
bathrooms, they are entitled to the full minimum wage for the time they spend at that work.");
*Osman v. Grube, Inc.*, No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer

may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Guarriello v. Asnani*, 517 F. Supp. 3d 1164, 1170 (D.N.M. 2021) ("[N]o tip-credit may be taken for periods in which a tipped employee spends a significant amount of time performing non-tip generating work.") (citing 29 C.F.R. 531.56(e)).

11.     In addition, an employer is prohibited from taking a tip credit and paying its tipped employees the subminimum hourly wage when the employee is engaged in nontipped duties that, even if they are *related* to the employee's tipped occupation (i.e. nontipped work directly supporting the employee's tipped work), take up more than 20 percent of the employee's time. *See Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern.*, Inc., 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06-civ-6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends

more than twenty percent of her time performing related but non-tipped duties.").

12.     Finally, an employer violates the tip credit by paying tipped employees subminimum hourly wages to perform *related* nontipped duties, where the employee is engaged in such related nontipped duties for more than 30 continuous minutes. *See* 29 C.F.R. 531.56(f)(4).

13.     Here, Defendants violated the FLSA by paying Plaintiff and the Collective Members a direct cash hourly wage of less than minimum wage ($7.25) required by the Section 206 of the FLSA.

14.     Moreover, Defendants committed multiple violations of the tip credit and therefore cannot rely on tips to supplement the subminimum hourly wages Defendants paid to Plaintiff and the Collective Members.

     a.    **Violation for failure to inform:** Defendants failed to inform Plaintiff or the Collective Members of Defendants' desire to rely on the tip credit to meet their minimum wage obligations. For instance, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice. In addition, Defendants failed to advise Plaintiff or the Collective Members in writing of the amount of the tip credit being taken each time it changed from the prior week.

     b.    **Violation for illegal kickbacks for non-203(m) items:** Plaintiff and the Collective Members were required to pay for certain clothing, tools, and other non-203(m) items to work for Defendants.

     c.    **Violation for improper handling of the tip pool, including exerting unlawful control over Plaintiff's tips vis-à-vis the tip pool:** Plaintiff and the Collective Members contributed a portion of their tips to a tip pool. However, Defendants did not distribute the tip pool pursuant to an agreement with its servers. In addition, Defendants cannot prove that it fully distributed the tip pool solely among customarily and regularly tipped employees.

     d.    **Violation for performing work unrelated to tipped occupation:** Plaintiff and

Collective Members were required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to polishing silverware and glasses, cleaning bathrooms, deep cleaning the restaurant, and other tasks unrelated to their job as servers.

e. **Violation for requiring servers to perform nontipped duties in excess of 20% of their time and for periods longer than 30 minutes:** Plaintiff and Collective Members were required to perform nontipped duties that even if such duties were related to their job as servers, such duties took up more than 20% of their time (and more than 30 continuous minutes). These duties included, but are not limited to: setting up tables, cleaning tables, bussing tables, wiping booths, refilling condiments, amongst other duties.

15.     As a result of these violations, Defendants did not comply with the strict requirements for taking a tip credit and thus have lost any ability to rely on the tip credit to supplement their failure to pay Plaintiffs the full minimum wage. Therefore, Defendants must compensate Plaintiff and all similarly situated employees—servers—the full minimum wage rate, unencumbered by the tip credit, for all hours worked. In other words, Defendants must account for the difference between the subminimum hourly wage paid to Plaintiff and Collective Members and the full minimum wage ($7.25) required by the FLSA. In addition, Defendants are liable to Plaintiff and the Collective Members for all misappropriated tips, plus liquidated damages in an amount equal to all damages owed to them. Finally, Plaintiff and Collective Members are entitled to recover an additional award to compensate them for their attorneys' fees and costs.

## II.     PARTIES

16.     Plaintiff Trey Lupton is an individual and resident of Oklahoma. Plaintiff Lupton was employed by Defendants as a server from approximately December of 2022 until sometime in March of 2023. Plaintiff was employed by Defendants to work as a server at their restaurant known as Lowood in Tulsa, Oklahoma. As evidenced by the notice of consent being filed with the Court, Plaintiff Lupton has consented to be a party-plaintiff to this action brought under the FLSA.

17.     The putative collective of similarly situated employees ("Collective Members") consists of all of Defendants' current and former employees who worked at least one shift as a server (i.e. waiter or waitress) at Defendants' restaurant location in Oklahoma and were paid a direct cash wage of less than minimum wage during the three-year period prior to the commencement of this action through the date this case is certified as a collective action. Collective Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).

18.     Defendant GB Provisions, LLC ("GB Provisions") is an entity formed under the laws of Oklahoma. As set forth below, GB Provisions meets the definition of an employer set forth in 29 U.S.C. § 203(d), and therefore, is liable for violating the FLSA.

19.     Defendant LowoodFire LLC ("LowoodFire") is an entity formed under the laws of Oklahoma. As set forth below, LowoodFire meets the definition of an employer set forth in 29 U.S.C. § 203(d), and therefore, is liable for violating the FLSA.

### III.   JURISDICTION AND VENUE

20.     Personal jurisdiction exists over each of the Defendants because each of the Defendants are residents of the State of Oklahoma.

21.     In addition, Defendants each have sufficient minimum contacts with the State of Oklahoma to confer personal jurisdiction. Defendants are each conducting business in Oklahoma. Furthermore, Defendants contracted with and employed Oklahoma residents, such as Plaintiff and the Collective Members, to work for Defendants at their restaurants in Oklahoma.

22.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et. seq.

23.     Venue is proper in this District because at least one of the Defendants resides in this District. In addition, venue is proper in this Division and District because a substantial part of the events and omissions giving rise to this claim occurred in Tulsa, Oklahoma.

### IV.   DEFENDANTS ARE REQUIRED TO COMPLY WITH THE FLSA

24.     At relevant times, Defendants jointly own and operate dining establishments across Oklahoma, including LowoodFire.

25.     Upon information and belief, GB Provisions is the entity that is responsible for managing and operating a group of restaurants in Oklahoma, including LowoodFire where Plaintiff was employed to work. Moreover, GB Provisions is the rightful owner of the name under which Defendants' restaurants do business, including "Lowood."

26.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

27.     At all relevant times, Defendants have acted directly or indirectly in the interest of an employer with respect to Plaintiff and the FLSA Collective Members.

28.     At all relevant times, Defendants have been an "enterprise" within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants have been engaged in the performance of related activities for a common business purpose—namely, operating dining establishments where they employed Plaintiff and multiple other individuals to work as servers (i.e., the Collective Members).

29.     At all relevant times, Plaintiff and the Collective Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) of Defendants.

30.     At all relevant times, Defendants have collectively, or individually, acted directly or

indirectly, in the interest of an employer with respect to Plaintiff and the Collective Members.

31.     At all relevant times, Defendants have collectively, or individually, been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

32.     Finally, as part of their employment, Plaintiff and the Collective Members handled food and other food service items that were purchased across state lines or traveled in interstate commerce, or both. In addition, while employed as servers to work at Defendants' restaurants, Plaintiff and the Collective Members served customers who were traveling from out-of-state or across interstate lines. Moreover, Plaintiff and the Collective Members regularly and frequently processed interstate credit card transactions. Finally, Plaintiff and Collective Members handled food and beverages that had been procured and traveled across interstate lines.

## V.     FACTS SUPPORTING MINIMUM WAGE AND TIP CREDIT VIOLATIONS

33.     Defendants own and operate several dining establishments where they employed many individuals as servers—including Plaintiff and the Collective Members—to serve and wait on customers dining at Defendants' restaurants.

34.     In exchange for their labor, Defendants pay their servers an hourly wage that is far less than the federally mandated minimum wage.

35.     At all relevant times, Defendants paid Plaintiff less than minimum wage.

36.     Because Defendants paid their servers less than minimum wage, in order to earn an income, Defendants' servers are required to rely on tips customers leave for them in recognition for the service they provided.  See *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 190 (5th Cir. 2015) (a tip is "'a sum presented by a customer as a gift or gratuity *in recognition of some service performed* for him. . . . []'") (quoting 29 C.F.R. § 531.52) (emphasis added).

37.     The FLSA permits employers in some circumstances, where all conditions are satisfied, to take a credit for a portion of those tips to make up the difference between the subminimum hourly wage and the full minimum wage. This method of payment is known as taking a "tip credit"—an affirmative defense—under the FLSA. *See e.g.,* 29 U.S.C. § 203(m).

38.     Here, Defendants purportedly seek to take advantage of the tip credit—by paying their servers less than minimum wage and taking a credit for a portion of the tips they earned to offset Defendants' minimum wage obligation.

39.     The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit. (See https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 28, 2023). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice

as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(Id.) (emphasis in original)

40.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the tip credit to offset its minimum wage obligations.

41.     In this case, Defendants did not satisfy the strict requirements for taking a tip credit. For instance, Defendants maintained a policy and practice whereby they failed to provide Plaintiff and the Collective Members with the statutorily required notice of the tip credit regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

42.     In addition, Defendants also failed to provide Plaintiff and the Collective Members with **written** notice of the information required by 29 C.F.R. § 516.28(a)(3). Specifically, "[t]he amount per hour which [Defendants took] as a tip credit" was **not** "reported to [Plaintiff and the Collective Members] **in writing** each time it [was] changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3) (emphasis added).

43.     Because Defendants failed to give Plaintiff and the Collective Members notice of all the provisions required by the FLSA (including written notice of the contents required by 29 C.F.R. § 516.28(a)(3)), Defendants cannot rely on tips and assert the tip credit as an affirmative defense to their failure to pay Plaintiff and the Collective Members the minimum wage required by Section 206 of the FLSA.

44.     Second, Defendants did not allow Plaintiff and Collective Members to retain all tips as required by Section 203(m).

45.     For instance, Defendants subjected Plaintiff and the Collective Members to an illegal policy that required Plaintiff and the Collective Members to pay for their uniforms, tools, and other non-203(m) items. Plaintiff and the Collective Members paid for certain required uniform clothing and other expenses to perform their duties for Defendants.

46.     Because Plaintiff and the Collective Members paid for their uniforms, tools, and other non-203(m) items, Defendants violated the tip credit because the costs of these non-203(m) items is a retention of tips and violates condition two of 29 U.S.C. § 203(m). *See e.g.*, *Donovan v. Simmons Petrol. Corp.*, 725 F.2d 83, 84 (10th Cir. 1983) (affirming that an employer's deductions of "cash register shortages and the amount of uncollectible checks accepted by its employees from the paychecks of employees who were on duty when the shortages occurred" was a willful FLSA violation); *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage); *Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("[t]he FLSA does not permit an employer to transfer to its employees the responsibility for the expense of carrying on an enterprise."); 29 C.F.R. 531.3(d)(1), (2); 29 C.F.R. 531.32(c); *see also Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (6th Cir. 1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit.").

47.     Moreover, Plaintiff and the Collective Members were required to contribute a portion of their tips to a tip pool each shift. However, the FLSA requires that an employer ensure

that "all tips received by [each] employee [be] retained by the employee . . .." 29 U.S.C. § 203(m). The sole exception to the requirement that employees retain all earned tips, when an employer takes the tip credit, is where the employer operates a lawful tip pool. *See id.* (requiring that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips"); 29 C.F.R. § 531.54 ("[V]alid mandatory tip pools . . . can only include those employees who customarily and regularly receive tips.").

48.     Moreover, Defendants violated the tip credit by unlawfully "exercising control over a portion of the[ir servers'] tips." *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 894 (D. Md. 2011) (finding violation of the FLSA where employer exercised control over employee's tips in violation of the tip credit provisions).

49.     For instance, Defendants unilaterally determined how to allocate tips from the tip pool—there was no agreement among the servers regarding the allocation of their tips from the tip pool. *See Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) (holding "tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid.") (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); *see also* 29 C.F.R. § 531.54 (defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves"). Because Defendants unilaterally decided, without input or agreement from Plaintiff and the Collective Members, how to distribute the servers' tips from the tip pool, Defendants did not comply with the FLSA and thus cannot claim a tip credit.

50.     In addition, Defendants also illegally exercised control over Plaintiff's and Collective Members' tips when Defendants chose to utilize the tip pool to reduce their payroll expense and pad their bottom line. Defendants cannot prove that the tip pool was fully distributed solely among customarily and regularly tipped employees. *See Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (employer has "the burden to prove it operated a legal tip pool"); *see also Steele*, 826 F.3d at 242 ("The employer carries the burden to prove its entitlement to the tip credit."); *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015) (holding employer "has the burden of establishing its entitlement to the tip credit."); *Porter v. W. Side Rest.*, LLC, No. 13-1112-JAR-KGG, 2014 U.S. Dist. LEXIS 57126, at *23 (D. Kan. 2014) ("Defendants bear the burden of proving they are entitled to take the tip credit.").

51.     Because Defendants cannot prove that it fully and lawfully distributed the tip pool solely among customarily and regularly tipped employees, Defendants cannot utilize the tip credit to pay Plaintiff and the Collective Members. *See e.g., Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979) (holding that TGI Friday's had the burden to prove a valid tip pool arrangement after its servers brought suit questioning the validity of the tip pool); *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'").

52.     Defendants also maintained a policy and practice whereby servers were required to perform non-tip producing side work unrelated to their tipped occupations. Defendants continued compensating Plaintiff and the Collective Members at the subminimum "tip credit" rate while

they were engaged in nontipped work (i.e. work unrelated to their job as servers). To be sure, while performing these non-tip generating duties, Plaintiff and the Collective Members were performing work that did not include interacting with or serving customers—the type of work that does not generally evoke tipping generosity.

53.     These non-tipped duties include but are not limited to the following: sweeping, cleaning, polishing silverware and glasses, cleaning the restaurant, kitchen duties, , and many other activities that are not related to their tipped occupation as servers.

54.     Defendants also maintained a policy and practice whereby Plaintiff and the Collective Members were required to spend a substantial amount of time, in excess of 20 percent, performing nontip producing duties related to their tipped occupation as servers.

55.     Specifically, Defendants maintained a policy and practice whereby Plaintiff and the Collective Members were required to spend a substantial amount of time, and much more than 20 percent of their time, performing nontip producing duties, including, but not limited to: setting up tables, cleaning tables, bussing tables, wiping booths, and other nontipped duties.

56.     Further, Defendants required Plaintiff and the Collective Members to perform non-tip producing work prior to the opening of the restaurant and after the restaurant closed. Indeed, Defendants required the Plaintiff and the Collective Members to arrive prior to the restaurant's opening for business, when there were no customers and no opportunities to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendants required the Plaintiff and Collective Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor cleaning duties. Plaintiff and Collective Members spent far more than twenty percent of their time performing non-tip producing work and for

continuous periods of time exceeding 30 minutes—including before the restaurant was open and after the restaurant was closed.

57.     However, Defendants continued paying Plaintiff and the Collective Members at the tip credit rate—less than minimum wage—while requiring them to perform these nontipped tasks. Many of the nontipped tasks that Defendants required Plaintiff and the Collective Members to perform are duties that should have been assigned to employees who Defendants are legally required to pay at or more than minimum wage.

58.     In other words, instead of assigning these tasks to an employee who Defendants are obligated to pay at least minimum wage, Defendants attempted to take advantage of the tip credit and assign these tasks to Plaintiff and Collective Members while continuing to pay them less than minimum wage.

59.     When Plaintiff and the Collective Members performed these non-tipped duties, they did not interact with customers and did not have an opportunity to earn tips.

60.     Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

61.     Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendants were capable of doing so. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track the time Plaintiff and the Collective Members spent engaging in nontipped duties.

62.     Defendants use a point-of-sale system to record hours worked by their tipped employees. Defendants then analyze the information collected by this system, including their labor

costs.

63.     Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to assign different job codes to Plaintiff and the Collective Members to track when they were engaged in nontipped duties.

64.     In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

65.     However, Defendants did not allow their tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

66.     Moreover, Defendants violated the FLSA by not even paying the minimum "tipped" hourly rate. Defendants required their tipped employees to pay for items for tools, uniform items, such as shirts, pants, and shoes, and other non-203(m) items. These expenses were primarily incurred for the benefit and convenience of Defendants.

67.     Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take credit for tips and offset their obligation to pay Plaintiff and the Collective Members the full minimum wage.

68.     As such, Plaintiff and the Collective Members were not compensated at the federally mandated minimum wage.

69.     Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants acted knowingly, willfully, and/or with reckless disregard of the law, carried and continue to carry out the illegal pattern and practice regarding their tipped employees as described

in this Complaint. Defendants' method of paying Plaintiff and the Collective Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## VI.   REVISED FIELD OPERATIONS HANDBOOK AND DUAL JOBS REGULATION

70.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time. However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv- 1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019); *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

71.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).

72.     After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

73.     After delaying the effective date of the Final Rule (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a

tipped employee can perform when an employer is taking a tip credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

74.     After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

75.     Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

76.     Here, Defendants illegally required Plaintiff and the Collective Members to perform non-tip producing work for an excessive period of time. Defendants required Plaintiff and the Collective Members to perform non-tipped for periods longer than 30 minutes during times when there was no opportunity to earn tips including before the restaurants were open for business, during their shifts, after the restaurants were closed, and other times when the restaurants did not have customers and there was no opportunity to earn tips. During these times, Defendants continued to pay Plaintiff and Collective Members less than minimum wage while they were forced to perform their assigned non-tip producing duties, as noted above.

77.     Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiff and the Collective Members pay at the full minimum wage rate per hour for all hours they worked for Defendants.

## VII.    COLLECTIVE ACTION ALLEGATIONS

78.     Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

79.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former employees who worked at least one shift as a server (i.e. waiter or waitress) at any of Defendants' restaurants in Oklahoma and were paid a direct cash wage of less than minimum wage during the three-year period prior to the commencement of this action through the date this case is certified as a collective action.

80.     Plaintiff has actual knowledge, through conversations with co-workers, that a collective of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

81.     Defendants employed other servers who are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

82.     Like Plaintiff, the Collective Members were not given proper notice of the tip credit provisions and performed substantial work that was unrelated to their tip producing duties for a significant period of time.

83.     Moreover, the Collective Members were all subject to the same unlawful tip pool.

84.     In addition, the Collective Members were similarly required to pay for various uniform clothing items, tools, and other items that were not board, lodging, or other facilities.

85.     The names and addresses of the Collective Members are available from Defendants' records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

86.     Although the exact amount of damages may vary among the Collective Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

87.     As such, the group of similarly situated employees ("Collective Members") can currently be defined as follows:

> **All current and former employees who worked at least one shift as a server (i.e. waiter or waitress) at any of Defendants' restaurants in Oklahoma and were paid a direct cash wage of less than minimum wage during the three-year period prior to the commencement of this action through the date this case is certified as a collective action.**

## VIII.   CAUSE OF ACTION NO. 1: FAILURE TO PAY THE MINIMUM WAGE

88.     Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

89.     This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wage. See 29 U.S.C. § 206.

90.     Plaintiff and the Collective Members were paid hourly rates less than the minimum wage while working for Defendants.

91.     Plaintiff and the Collective Members were not exempt from the minimum wage requirements of the FLSA.

92.     Defendants' failure to comply with the minimum wage requirements of the FLSA, and in particular the tip credit requirements, resulted in Plaintiff and the Collective Members being paid less than the Federal minimum wage rate.

93.     Defendants' failure to pay the minimum wage to Plaintiff and the Collective Members in violation of the FLSA was willful and not based on a good faith belief that their conduct

did not violate the FLSA. 29 U.S.C. § 255(a).

## IX.   CAUSE OF ACTION NO. 2: UNLAWFUL KICKBACKS

94.   Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

95.   The expenses that Defendants required Plaintiff and Collective Members to pay for and the mandatory tip-outs that Defendants required from Plaintiff and Collective Members constitute unlawful "kick-backs" to an employer, which is proscribed by the FLSA, 29 U.S.C. § 203(m).

96.   In addition, section 203(m)(2) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

97.   The unlawful kickbacks received or required by Defendants were obtained knowingly, willfully, intentionally, or in bad faith.

98.   Plaintiff and Collective Members are entitled to an award of back pay for all unlawful kickbacks required by Defendants.

## X.   WAGE DAMAGES SOUGHT

99.   Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

100.   Plaintiff and the Collective Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

101.   Plaintiff and Collective Members are entitled to reimbursement of all misappropriated tips plus an equal amount as liquidated damages.

102.     Plaintiff and Collective Members are entitled to all their misappropriated funds, including repayment of all expenses Defendants required Plaintiff and Collective Members to incur plus an equal amount as liquidated damages.

103.     Plaintiff and Collective Members are entitled to an amount equal to all unpaid wages found due (including all their misappropriated tips and unlawful expenses incurred) as liquidated damages because Defendants' actions were not based upon good faith. See 29 U.S.C. § 216(b).

104.     Plaintiff and Collective Members are entitled to recover damages for the past three (3) years because Defendants' violations were willful.

105.     Plaintiff and Collective Members are entitled to recover their attorneys' fees and costs as required by the FLSA. See 29 U.S.C. § 216(b).

## XI.     JURY DEMAND

106.     Plaintiff hereby demands trial by jury.

## XII.     PRAYER FOR RELIEF

107.     For each of the foregoing reasons, Plaintiff, individually and on behalf of Collective Members, respectfully requests that judgment be entered in their favor and against Defendants, jointly and severally, awarding Plaintiff and the Collective Members the following:

a.   For an order pursuant to Section 216 of the FLSA finding Defendants liable for unpaid wages (including all misappropriated tips and all unlawful expenses incurred) due to Plaintiff (and those who join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all misappropriated tips and paid business expenses) due to Plaintiff (and those who join in the suit);

b.   For an order awarding Plaintiff (and those who join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

c.   For an order awarding Plaintiff (and those who join in the suit) all attorneys'
fees incurred;

d.   For an order awarding Plaintiff (and those who join in the suit) all costs and
expenses incurred in pursuing this action; and

e.   For an order granting any such other and further relief as this Court deems just
and appropriate.

\*      \*      \*

Respectfully submitted,

By: _/s/ Drew N. Herrmann_
Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102

AND

Jeff A. Taylor
State Bar No. 17210
The Offices at Deep Fork Creek
5613 N. Classen Blvd
Oklahoma City, OK 73118
Phone: (405) 286-1600
Fax: (405) 842-6132

ATTORNEYS FOR PLAINTIFF
AND COLLECTIVE MEMBERS